UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| DONALD A. ORR, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 06-2178 |
| ROBERSON MANAGEMENT CORPORATION and ROGER ROBERSON, | ) |
| Defendants. | ) |

**OPINION**

On September 15, 2006, Plaintiff Donald Orr filed a complaint against Defendants Roberson Management Corporation and Roger Roberson alleging a claim under the Employee Income Retirement Income Security Act (ERISA). On October 5, 2006, Defendants filed a Motion for Summary Judgment (#4). The matter is now fully briefed, and for the reasons that follow, Defendants' Motion for Summary Judgment is GRANTED.[1]

FACTS

Plaintiff Orr worked with Roberson and his companies since 1985. Orr entered into an

---

[1] Both parties have also filed Motions to Strike. Defendants filed Motions to Strike (#23, #24) portions of the Affidavit of Eric Schacht and the Affidavit of Donald Orr, exhibits to Plaintiff's Response to the Motion for Summary Judgment (#14). Orr also filed a Motion to Strike (#27) the Affidavit of Roger Roberson, an exhibit to Defendants' Reply to the Motion for Summary Judgment (#22). Motions to strike are disfavored. See Clegg v. Sullivan Corp., 2003 WL 21254558, at *1 (S.D. Ind. 2003). Therefore, generally, it is not this court's practice to grant motions to strike when ruling on motions for summary judgment. See Fenje v. Feld, 301 F. Supp. 2d 781, 789 (N.D. Ill. 2003). This court is confident it can rely only on admissible evidence in ruling on the Motion for Summary Judgment. Accordingly, the Motions to Strike are DENIED.

employment agreement with Pre-Fab Transit Company on June 1, 1995. This agreement was memorialized in the First Amended and Restated Employment Contract. The First Amended and Restated Employment Contract set forth a Deferred Compensation Plan. On December 11, 1996, Pre-Fab Transit Company changed its name to PFT Roberson, Inc.

In an affidavit attached to the motion for summary judgment, Roger Roberson, the Chairman of the Board of Directors of Pre-Fab Transit Company and Roberson Management Corporation, indicates that Orr was an employee only of Pre-Fab Transit Company which later became PFT Roberson, Inc. However, while employed by PFT Roberson, Inc., Orr's compensation was paid on accounts held in the name of Roberson Management Corporation. Orr also received W-2 forms from Roberson Management Corporation. Defendant Roberson indicates in his affidavit that this procedure was setup as a "purely administrative measure between affiliated entities." Roberson states that PFT Roberson, Inc. reimbursed Roberson Management Corporation for the compensation that was paid to Orr on Roberson Management Corporation accounts. According to Roberson, this procedure was put into place to protect the confidentiality of the salaries of PFT Roberson, Inc.'s highly compensated upper management employees from the general clerical and bookkeeping employees of PFT Roberson, Inc. Roberson further indicates all of Orr's employment benefits were provided directly by PFT Roberson, Inc., including his 401(k) plan, health insurance, company car, and expense account reimbursements. According to Roberson, the PFT Roberson Deferred Compensation Plan was administered by PFT Roberson, Inc. and neither Roberson nor Roberson Management Company acted on behalf of the Plan.

Orr asserts that he was employed by Roberson Management Corporation, not PFT Roberson, Inc. One Board of Directors served all of the Roberson companies, and Roberson was the Chairman of the Board of Directors for all of them. The same people served as directors and officers for all of the companies as well. Orr asserts that the Roberson companies did not regularly observe corporate

formalities and commingled funds and assets. Orr asserts that Pre-Fab transit Company was listed as his employer in the employment contract entered into on June 1, 1995, as an accommodation to Roberson.

Orr bases his ERISA claim in the instant case not on the First Amended and Restated Employment Contract which set forth the Deferred Compensation Plan. Rather, Orr bases his claim on a letter dated June 25, 1999, signed by Roberson as "Chairman of the Board of Directors." In the opening paragraph, Roberson states that "the Board of Directors of PFT Roberson, Inc., and Roberson Management Corporation have determined that it is in the best interest of the companies that your employment with PFT Roberson, Inc. be terminated." This letter went on to state:

> Pursuant to Section 15(e) of your First Amended and Restated Employment Contract, this letter constitutes written notice to you of the termination of your employment as of the end of this business day (i.e. June 25, 1999). Enclosed with this letter are checks for your compensation earned through June 25, 1999 and an additional check representing ninety (90) days severance pay based on your current base compensation, as required by Section 15(e) of your Contract.
>
> In consideration for the restrictive covenant contained in paragraph 16 of your Contract, PFT Roberson, Inc. will cause you to be paid $75,000 per annum for a period of two years commencing as of June 25, 1999, payable as an independent contractor's consulting fee rather than as wages, on a bi-weekly basis. As provided by paragraph 16 of your Contract, these payments shall be deducted and shall reduce the deferred compensation you have earned pursuant to your Contract. The Summary of your deferred compensation calculations and vesting schedule which we recently approved is enclosed with this letter. Your total vested deferred compensation balance, inclusive of the $75,000 per annum consulting fees referenced in this letter,

> equals $292,313.28. This amount represents the total deferred compensation and consulting fees due to you will be payable in accordance with the following schedule:
>
> (a) $75,000 payable bi-weekly over the one year period commencing on June 25, 1999;
>
> (b) $75,000 payable bi-weekly over the one year period commencing on June 25, 2000; and
>
> (c) $142,313.28 payable on January 1, 2005.
>
> As you are aware, I am willing to discuss and consider an equitable adjustment of the time period over which these amounts are payable to you and the terms of your post-employment relationship with PFT Roberson, Inc.

On August 10, 2005, an Involuntary Petition under Chapter 7 of the Bankruptcy Code was filed against PFT Roberson, Inc. On February 14, 2006, the Bankruptcy Court entered its final decree closing the bankruptcy case. PFT Roberson has been and remains insolvent since that date. Orr did not make a claim in the bankruptcy case. Roberson Management Company remains a viable corporation with Roberson listed as its president in Illinois Secretary of State documents.

## ANALYSIS

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, the court must decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). In reaching this decision, the court must consider the evidence in the light most favorable to the party

opposing summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The burden of establishing that no genuine issue of material fact exists rests with the movant. Jakubiec v. Cities Serv. Co., 844 F.2d 470, 473 (7th Cir. 1988).

Orr brings his claim pursuant to ERISA. However, in his Response to the Motion for Summary Judgment, Orr states that he is not bringing his claim pursuant to the provisions of the First Amended and Restated Employment Contract which set forth the Deferred Compensation Plan. Rather, Orr asserts that the June 25, 1999, termination letter he received established an employee welfare benefit plan under ERISA. While Orr does not indicate how this letter creates a plan under ERISA, it appears Orr is arguing this letter created a severance plan within ERISA's coverage.

"The decisive inquiry in determining whether a severance plan falls within ERISA's coverage is whether the plan requires an ongoing administrative program to meet the employer's obligation." Bowles v. Quantum Chem. Co., 266 F.3d 622, 631 (7th Cir. 2001). While ERISA applies where a severance plan could place "periodic demands on an employer's assets that create a need for financial coordination and control," "the requirement of a one-time lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation, and ERISA therefore does not apply." Bowles, 266 F.3d at 631. ERISA, therefore, does not apply where an administrator is "required simply to make an arithmetical computation." Bowles, 266 F. 3d at 632. Furthermore, the type of plan covered by ERISA "presupposes careful claims processing." Collins v. Ralston Purina Co., 147 F.3d 592, 596 (7th Cir. 1998).

In the instant case, Orr is the only employee a part of this alleged severance plan as Orr asserts the plan was created by the termination letter sent to him. Furthermore, the letter indicates that Orr would be paid: (a) $75,000 payable bi-weekly over the one year period commencing on June 25, 1999; (b) $75,000 payable bi-weekly over the one year period commencing on June 25, 2000; and (c) $142,313.28

payable on January 1, 2005. There is no claims processing mechanism and certainly no administrative program to implement Orr's payments. Defendants are not required to make nonclerical judgment calls with regard to the receipt of these payments. Rather, Orr is simply receiving a predetermined amount of money to be dispersed in a mechanized fashion. Accordingly, this court finds the termination letter sent to Orr did not create a "plan" under ERISA. See Ankenbruck v. Rochester Midland Corp., 2006 WL 2524116 at *4 (N. D. Ind. 2006) (no ERISA plan where policy required no discretion and no nonclerical judgment call); Porter v. Time4media, Inc., 2006 WL 3095750 at * 8 (N.D. Ill. 2006) (no ERISA plan where "disbursement of payments to [plaintiff] would require anything more than a straightforward calculation of an applicable amount"). While Orr may be able to state a claim for breach of contract under state law, that is not for this court to decide as this court's jurisdiction is based upon ERISA. Accordingly, this case must be dismissed for lack of subject matter jurisdiction.

IT IS THEREFORE ORDERED:

(1) Defendants' Motions to Strike (#23 & #24) are DENIED.

(2) Plaintiff's Motion to Strike (#27) is DENIED.

(3) Defendants' Motion for Summary Judgment (#4) is GRANTED.

(4) This case is terminated.

ENTERED this15th day of March, 2007

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE